373 So.2d 1356 (1979)
HEMENWAY COMPANY, INC.
v.
BARTEX, INC. OF TEXAS, et al.
No. 12701.
Court of Appeal of Louisiana, First Circuit.
July 16, 1979.
Rehearing Denied August 28, 1979.
*1357 Eugene R. Preaus, New Orleans, of counsel, for plaintiff-appellee, Hemenway Co., Inc.
Joseph F. Keogh, Baton Rouge, of counsel, for defendant-appellant, Bartex, Inc., of Texas.
Before CHIASSON, EDWARDS and COLE, JJ.
EDWARDS, Judge.
This suit arises out of disputes between plaintiff, Hemenway Company, Inc., and defendants, Bartex, Inc. of Texas (a/k/a Bartex, Inc.) and its surety, Highlands Insurance Company, regarding the construction of Hemenway's furniture store in Baton Rouge. After trial on the merits, the trial court rendered judgment in favor of Hemenway in the amount of $70,724.93 as damages for the untimely completion of the project and for defects in the construction. Additionally, the judgment awarded Bartex the sum of $43,534.13 on its reconventional demand as the balance due on the contract plus the cost of certain change orders. Defendants appealed the award in favor of Hemenway.
On January 22, 1973, Hemenway, as owner, and Bartex, as contractor, entered into a written contract for the construction of a new retail furniture facility for Hemenway in Baton Rouge. The contract inter alia provided a completion date of June 15, 1973. To allow the lender to perfect its mortgage lien, this contract was cancelled by mutual agreement of the parties on February 20, 1973. Thereafter, on March 2, 1973, the parties entered into another written construction contract identical to the January 22, 1973, contract. Again, the contract called for a completion date of June 15, 1973.
Highlands issued a private works bond in the amount of $556,700 on March 2, 1973, for the performance of the work undertaken by Bartex. The bond was attached to and made a part of the construction contract of March 2, 1973.
The building was not completed by the date stated in the contract, June 15, 1973.
*1358 In fact, the building was not occupied until March 20, 1974. Thereafter, Hemenway filed an acceptance dated May 17, 1974, asserting that the building was substantially complete.
On appeal, defendants assign the following errors allegedly committed in the trial court:
1. "The Honorable Trial Judge erred in allowing Hemenway, Inc., to prove its actual damages sustained by the alleged delay of Bartex, since the written contract between Hemenway, Inc., and Bartex, Inc., contained its own specific provisions with regard to damages for delay."
2. "Assuming for the sake of argument that Hemenway should be allowed to claim actual damages for alleged delay, the Honorable Trial Judge erred in finding that Bartex was entitled to no extension of the contract deadline beyond October 7, 1973."
3. "The Honorable Trial Judge erred in awarding Hemenway both the rental on its old facility and the interim interest on its new facility as items of pure damage, since this results in an unjust enrichment of Hemenway at Bartex's expense."
4. "The Honorable Trial Judge erred in awarding Hemenway the sum of $2,062.64 as damages for `loss of use' of a stock picker as Hemenway was acquiring an ownership equity in such item and its economic life was not shortened by such delay."
5. "The Honorable Trial Judge erred in allowing Hemenway, Inc., damages for the alleged defects in the building since Hemenway had unconditionally accepted the premises."
6. "The Honorable Trial Judge erred in awarding Hemenway the sum of $16,000.00 for alleged defects in the parking lot."

1.
The construction contract provided in Article 2:
"Time of CompletionThe completion date for this project is established as not later than June 15, 1973 and liquidated damages of subject to a further and separate agreement to be executed within 15 days ($ ) per day shall be assessed for every calendar day beyond that date. Extensions of time shall be made in accordance with Article 8 of the General Conditions."
No agreement was ever made concerning the amount of any liquidated damages for delay.
Defendants nonetheless contend that since the parties intended to have stipulated delay damages, although the amount was never agreed upon, that Hemenway is prevented from proving and recovering the actual damage occasioned by the delay.
We do not agree. The law is settled that where the parties have the capacity to, and do in fact, stipulate for liquidated delay damages, the stipulated amount will prevail over actual damages and the court will not inquire whether the actual damages equaled or exceeded the agreed amount. Lama v. Manale, 218 La. 511, 50 So.2d 15 (1950). However, that is not the situation in the instant case. While it appears that the parties contemplated liquidated damages in the contract of March 2, 1973, it is undisputed that no such damages were ever agreed upon.
Consequently, the trial court was correct in allowing Hemenway to prove and recover the damages occasioned by the delay in construction. See LSA-C.C. Art. 1934.

2.
The contract provided, as state above, a completion date of June 15, 1973. The trial court, for reasons not here pertinent, extended the contract's completion date to October 7, 1973. Defendants maintain that the trial court erred in refusing any further extensions of the completion date. They argue that they are entitled to a sixteen week extension because of rainy weather and union strikes.
*1359 Our careful review of the record reveals that defendants failed to prove with any degree of exactitude the number of days lost to rain, strikes or other delays. In this, defendants failed to meet their burden of proof.
We find that the trial court was correct in refusing any additional extension of the contract's completion date beyond October 7, 1973. Delay damages are recoverable for the period of October 7, 1973, through March 20, 1974.

3.
As damages for delay, the trial court inter alia awarded Hemenway the sums of $24,914.99 as rent paid on its old store during the delay, and $16,482.30 for additional interest paid on the interim financing. Defendants assert that this is erroneous; that it amounts to unjust enrichment of Hemenway at their expense; and that Hemenway can recover only the interest on the interim financing.
The measure of damages for the breach of an obligation is that amount which will put the plaintiff in the same position he would have been in had the obligation been fulfilled. Harelson v. Parish of East Baton Rouge, 272 So.2d 382 (La.App. 1st Cir. 1972). See also LSA-C.C. arts. 1930, 1934 and 2769.
Mr. William H. Shannon, Hemenway's president, testified regarding the rent paid on the old store, the interest on the interim financing and the terms of the permanent financing. He stated that the permanent financing would not attach until the building was completed; that the number and amount of the permanent financing payments were not affected by the delay in completion; and that Hemenway would pay the same amount in permanent financing whether the building was completed in October 1973, March 1974 or May 1974. However, he added that the delay in the completion of the building and, consequently, a commensurate delay in the commencement of the payments on the permanent financing, meant an additional interest expense on the interim financing as well as the payment of rent at the old store where the business was forced to continue its operation.
We believe that the trial court was correct in awarding both the rent and the interest on the interim financing paid as a result of the delay in construction, since both of these sums would be needed to place plaintiff in the same position it would have been in had the construction been completed timely. Morein v. G. J. DeVille Lumber Co. Inc., 215 So.2d 208 (La.App. 3rd Cir. 1968). See Master Maintenance Engineering, Inc. v. McManus, 292 So.2d 284 (La.App. 1st Cir. 1974).
We find no merit in defendants' assertion that plaintiff is receiving unjust enrichment.

4.
Another item of delay damages awarded by the trial court was the sum of $2,062.64 for the loss of use of a piece of machinery, called a stock picker, which was leased and/or purchased in October 1973, but which could not be used immediately because of the delay in construction. This award represents the monthly payments made during the months of October 1973 through March 1974. Defendants maintain that this award should be reversed.
The record indicates that the stock picker was acquired in September 1973 especially for use in the new store. Payments were made on this item monthly as in the case of a lease, the payments began in October 1973; however, Hemenway was to acquire ownership of this equipment after the final payment.
Shannon testified that Hemenway was not able to use the stock picker until December 1973, or January 1974. But when asked if the stock picker was used in October 1973 to move furniture, Shannon stated that he "couldn't say specifically."
Although an amount for the loss of use of the piece of equipment may be recoverable, *1360 there is no evidence in the record to establish the duration of such a loss. Additionally, there is no evidence which even attempts to put a value on such a loss aside from Shannon's testimony regarding the monthly payments.
It is the plaintiff's burden to prove damages. The evidence in the record is insufficient to support any award for the loss of use of the stock picker.
Accordingly, the trial court's award of $2,062.64 is reversed.

5.
Defendants contend that plaintiff is barred from recovering for any defects in the building inasmuch as plaintiff filed an acceptance of the project and, defendants argue, the acceptance operates as a waiver of all such claims.
For the reasons assigned by the trial judge in his written decision, which we quote below, we likewise reject defendants contention:
"As a general principle, it is well settled law in Louisiana that even if the owner proves the existence of the defects or omissions and the cost of repairing them he is nevertheless barred from recovering the cost thereof if he accepted the work despite the patent defects or imperfections discoverable upon reasonable inspection. Acceptance, however, does not bar the owner from recovering for defects not readily discoverable by ordinary inspection, or for defects which manifest themselves subsequent to the acceptance, or for defects which are explicitly excluded from the terms of the acceptance. Charles Cloy, General Contractors, Inc. v. DiVicenti Brothers, Inc., 308 So.2d 495 (La.App. 1st Cir. 1975). Nonetheless, it is also well established that acceptance with the understanding that certain defects will be remedied does not bar recovery for the cost of remedying such defects. Charles Cloy v. DiVicenti, supra. Further, where a plaintiff is of necessity forced to accept the premises he cannot be said to have voluntarily waived his right to claim damages. In Michel v. Efferson, 233 [223] La. 136, 65 So.2d 115 (1953), the Louisiana Supreme Court said: `The defense of waiver is a special one and the burden of proof is on the defendants to show that the plaintiff had knowledge of the defects and intentionally waived the same .... Waiver can result only from the intentional relinquishment of a known right.' While Michel, supra, involved the actual taking of possession and not a recorded acceptance, it would appear that the legal principles applicable to waiver are pertinent to the instant case. Under the circumstances present herein, it does not appear that plaintiff intended to waive any claims for defective construction. Rather, the evidence discloses that all parties were aware of plaintiff's dissatisfaction with various items enumerated on the punch list of April 1974, and also that if acceptance of the building was not made the loan commitment would expire causing an increase of one-half percent on the interest rate for the life of the loan. (See Exhibit P-36) This increase would certainly have been quite substantial and in view of the contractor's delay might well have been assessed as damages due to delay. Consequently, this Court does not believe that the filing of the acceptance should bar Hemenway in view of the pressing need to accept the facility of which fact all parties were clearly cognizant. Further, the language of the acceptance indicates only that Hemenway has attested to substantial, completion of the facility:
`The improvements, which are the subject of a certain building contract entered into by and between Hemenway Company, Incorporated, as owner, and Bartex, Inc., as contractor, dated March 5, 1973, recorded in Bundle No. 8281, Original No. 54 in East Baton Rouge Parish, have been substantially completed and are hereby accepted by said owner, who authorizes and requests *1361 the Clerk of Court and Ex-Officio Recorder for the Parish of East Baton Rouge to make note of this acceptance in the records of his office in accordance with law.'
Substantial performance indicates only that the facility may be used for the purpose intended even though certain defects or omissions exist. Neel v. O'Quinn, 313 So.2d 286 (La.App. 3rd Cir. 1975). By its language, then, the acceptance does not purport to indicate final completion, in which case it might be said to operate as an acknowledgment that no further work remained to be done. This was the situation presented in the Charles Cloy case, supra, where the court found that inasmuch as the acceptance filed for record attested that the building was complete (the word substantial was scratched out) it would in fact bar the owner's claim."
"There is also some indication that regardless of the acceptance the contractor continued work on the premises as late as July 1974, especially with regard to the loading dock. Mr. Gorman, defendant's vice-president, acknowledged that Bartex did respond to various call-backs on certain items which indicates that Bartex was aware that Hemenway did not intend to waive any defects in its building. And, finally, the contract itself includes a warranty provision, Art. 4.5, which provides:
`4.5.1 The Contractor warrants to the Owner and the Architect that all materials and equipment furnished under this Contract will be new unless otherwise specified, and that all Work will be of good quality, free from faults and defects and in conformance with the Contract Documents. All Work not so conforming to these standards may be considered defective. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.'
There has been no evidence of a waiver of this warranty which would preclude recovery thereunder. It is the settled law of Louisiana in sales contracts that a waiver of warranty must be clear and express. Hendricks v. Horseless Carriage, Inc. [La.App.], 332 So.2d 892. While a building contract is not a sale it would seem that no less stringent a standard should apply."
"In summary, then, the Court does not feel that the acceptance in this case should bar Hemenway's claim for defects. Therefore, it will be necessary to consider each claim presented to determine what damages will be awarded."

6.
Finally, defendants complain that the trial court erred in awarding $16,000, the cost of resurfacing the entire parking lot, for certain defects in the front portion of the parking lot.
We agree. There is definite evidence that defects exist in the front parking lot. However, there is no evidence in the record which would support an award to resurface the entire lot. Indeed, Frank J. Vicari, Hemenway's Architect, testified that the entire lot did not require resurfacing, but that only the front lot, which constitutes 70% of the entire lot, was in need of resurfacing. The cost of this work would be $11,200. Accordingly, the trial court's award must be reduced to that amount.
For the above reasons, the judgment of the trial court is amended to reduce the award in favor of Hemenway by the sum of $6,862.64 to an award of $63,862.29, and is affirmed in all other respects. Costs are assessed one half against plaintiff and one-half against defendants.
AMENDED AND AFFIRMED.